This time we'll hear Next v. Viber. Good morning. Good morning, Your Honors. May it please the Court, my name is Jeff Weingart and I'm here on behalf of the defendant appellee Viber Media, S-A-I-R-L, formerly Viber Media, Inc. Our position, of course, is that the District Court's entry of summary judgment on behalf of Viber should be affirmed by this Court in all respects. I appreciate the Court allowing me to argue today as my adversary a couple of days ago decided she would just . . . What is left of your adversary's grounds of appeal? Because so many issues were argued in the trial court, but a lot of things have been abandoned, it seems to me. So a lot of things have been abandoned. The two parts that she is now arguing is the HD architecture and method of monetization, that those two things, that's how they've labeled them, are trade secrets. The monetization is based on paying by phone call instead of paying by subscription? Well, that's a good question, Your Honor, because there, as Judge Sullivan found, there was a lack of information around what all these terms meant and how they actually work and what the trade secrets are behind them. He determined that by looking at the cartoonish slides, as he called them, and by looking and by reading the Urchenko Declaration and the Marx Declaration, he could not determine what the trade secrets are, that there weren't any trade secrets identified. And that was the basis of his decision. The problem with the reply that my adversary put in is that she's, on the one hand, arguing that there was an issue with Judge Sullivan's parsing of the scheduling order that he submitted. And so she's saying that, in reply, that she's not really complaining about the scheduling order. If you recall, there was a phase one, and in phase one, the plaintiff, Nix, was supposed to do something very specific, and that scheduling order is in the record at A187 through A190. Your Honors, the phase one of discovery, and this was so ordered by the court, Nix was supposed to, and was ordered to, produce, shall produce, to defendant, Viber Media, all materials and information which they allege were disclosed and or provided to Viber and contain or constitute trade secrets or confidential information of the plaintiffs. And it goes on to identify the trade secrets that were set forth in the amended complaint. I think the argument that Nix makes is that they were held to fall short at this stage for items that were due to be raised in phase two. Well, that's the argument she's making and . . . Why is that wrong? That's wrong because Judge Sullivan made the decision based on solely what was not produced in phase one. In other words, that Nix was not able or did not produce materials that it alleged were conveyed to Viber in phase one. It didn't do it in the slides, which . . . And your point is that they didn't need discovery in order to figure out what they did and what they conveyed. That's right, Your Honor. As Judge Sullivan said, there are elements to a trade secret and a breach of nondisclosure agreement and both those indicate that you first have to identify what the trade secret is and the proprietary information is. Once you do that, then you're out of phase one. You can go into phase two and everybody can get discovery. What happened in our phase one was you had these slides, these two slides, and then you had Mr. Yurchenko . . . Did the slides disclose or explain what kind of a switch would be used to facilitate a conference call among a thousand people? No, Your Honor. The slides didn't give any indication of what the enablement was and that's why the other side put in the Yurchenko declaration in phase one. The only problem was Yurchenko was never communicated to next and he was the one interpreting what the slides conveyed, but even his declaration was vague and ambiguous and Judge Sullivan goes through ad nauseum in his decision about that where he quotes Yurchenko at length, then he quotes Marx at length, and then we had a 30B6 deposition of Mr. Di Prato. So all these people, none of them had any contact with Viber and they couldn't articulate what the trade secret was. It would be a great flaw if they articulated a trade secret that was conveyed either in the slides or in conversations. The fact that the people submitting the affidavits didn't talk to Viber is not fatal if they had conveyed that there was secret information conveyed in the slides or otherwise. If they had been able to articulate that those slides conveyed certain information and actually that there was source code conveyed or ... Correct. You seem to say just that they didn't speak to Viber is fatal to the case. It's obviously not. Let me address that. My point was that the adversaries could have designated different 30B6 deponents that actually had contact with Viber and would have been able to say first hand that they had described, for instance, on the phone what the source code was. That was the problem. There was no way to put any flesh on the slides as to what was or was not conveyed because the people who did the conveying were never noticed for deposition. Well, correct. I issued a 30B6 deposition notice and Next certainly could have designated different people to come and speak to different topics. In fact, we objected to Mr. DiPrato because we said he didn't have any first hand knowledge, but they stuck with him. We don't have any indication of what verbally was conveyed or whether it was designated confidential. One of the things that my adversary does is she says in her reply that there's no requirement under the nondisclosure agreement that information be designated confidential. That's patently untrue. The NDA says that the materials have to be designated as confidential. That's one of the things. We see that the adversary is focused on the discovery order and the reply says that they don't take any issue with the discovery order. Therefore, she stands by that the standard should be de novo review. In essence, she's basically saying that she says on the one hand in the reply that Judge Sullivan had the authority to go ahead and set his discovery schedule, but in the opening brief, she complains at length about the discovery schedule. I know. It's one thing to say that judge has authority to set a discovery schedule. It's another thing to say that the judge has authority to decide after phase one an issue that was reserved for discovery in phase two, which I think is her argument. It may not be valid, but that's her argument. Her argument is she's trying to basically say that the concept of finding what happened to . . . she's basically talking about two different things. She's ignoring the fact that the scheduling order says specifically that NECS was obligated to provide to us in phase one what was a trade secret that was conveyed. Then if nothing was a trade secret that was conveyed, then Judge Sullivan said, well, why go further? If there's no trade secrets, well, then that means phase two, finding out how the materials that weren't trade secret or weren't confidential information in the first place made their way through Viber and to other third parties, allegedly. There was no need to go there. Is it Viber's position that no trade secret was ever conveyed? No trade secret was ever conveyed. That's the position that Viber has. That's our position, and it's also broken. It's also illustrated in the record that we don't have marks. Nothing in marks is a trade secret. We can go through, and I can show you that that's the case. Nothing that Yurchenko describes. What's happened here is that the adversary is essentially ignoring case law, which says that the trade secrets have to be identified with specificity, and that's in the sit-up case. The sit-up case quotes Cites to Hyman, this court's case, and Big Vision and Imperial Chemical, where there has to be a description, a unified description of all the features that were interrelated, the know-how and the method by which things were done and how to make it work. None of the materials show how it was to be made to work.